IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF WEST VIRGINIA

BECKLEY DIVISION

BETSY EARHART, Individually,
and as Personal Representative
and Administrator of the Estate of
Colett Xan Easter, deceased,

    Plaintiff,

vs.

KERREN H. ELDER, M.D.,

    Defendant.

CASE NO. 5:18-CV-01000

**O R D E R**

Pending before the Court is Bluefield Hospital Company, LLC d/b/a Bluefield Regional Medical Center's (hereinafter referred to as "BRMC") ***Motion to Quash Plaintiff's Subpoena as it Pertains to Privileged Information*** (ECF No. 29), to which Plaintiff filed a ***Preliminary Response*** (ECF No. 33). Prior to the informal in chambers telephone conference on these matters, BRMC filed a Privilege Log as it related to the alleged privileged information. (ECF No. 34) After holding an informal in chambers telephone conference on November 28, 2018, it became apparent that the parties needed additional time to attempt reconciliation of the issues raised in their pleadings, accordingly, the undersigned issued an order outlining a briefing schedule concerning BRMC's ***Motion***. (ECF No. 35)

In compliance with this Court's briefing schedule, BRMC filed a Revised Privilege Log[1] regarding the documents sought by Plaintiff's subpoena. (ECF No. 38) Plaintiff filed a ***Response***

---

[1] For purposes of consideration of BRMC's asserted privileges and assessment of the sufficiency of the privilege log under Rule 26(b)(5)(A) of the Federal Rules of Civil Procedure, the undersigned's review concerns only the Revised Privilege Log filed herein, as having been submitted as BRMC's final form of its privilege log.

1

to BRMC's ***Motion*** and the Revised Privilege Log. (ECF No. 40) Defendant filed a ***Joinder*** in BRMC's ***Motion***. BRMC filed a ***Reply*** to Plaintiff's ***Response*** (ECF No. 42) and Plaintiff filed a ***Response*** to Defendant's ***Joinder***. (ECF No. 46)

Plaintiff requested the undersigned to conduct an *in camera* review of the documents sought in the subpoena, and upon the undersigned's request to BRMC if it is amenable to an *in camera* review, BRMC declined, and submitted a letter through counsel explaining why it disagrees with an *in camera* view (ECF No. 50) along with additional documentation in support of its ***Motion to Quash***: the CHS PSO, LLC Provider Participation Agreement with BRMC (ECF No. 50-1) and an Affidavit signed by BRMC Chief Executive Officer, Jim O'Loughlin (ECF No. 50-2). Plaintiff then filed a ***Response*** to BRMC's letter. (ECF No. 51)

Accordingly, the matters raised herein have been fully briefed and is ripe for decision. For the reasons stated *infra*, the undersigned **GRANTS** BRMC's ***Motion to Quash Plaintiff's Subpoena as it Pertains to Privileged Information*** (ECF No. 29):

## Background

This civil action was filed by Plaintiff Betsy Earhart on behalf of the decedent, Colett Xan Easter, and concerns alleged medical malpractice committed by Defendant Elder at Bluefield Regional Medical Center in Bluefield, West Virginia. On October 19, 2018, Plaintiff filed her Notice of Intent to Serve Subpoenas (ECF No. 21), which included a Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action issued to BRMC which lists twenty-five (25) separate requests for a variety of information. (ECF No. 21-2) BRMC states that it responded to many of the separate requests that did not ask for privileged information, however, the following requests are specifically disputed between BRMC and Plaintiff:

2

#4  Provide a copy of any applications for credentials or privileges submitted by Dr. Elder or on his behalf to provide medical services and/or treatment in Bluefield Regional from January 1, 2008 to the present.

#5  Provide a copy of any applications for credentials or privileges submitted by Dr. Elder or on his behalf to provide medical services and/or treatment in any hospital, clinic, or other health-related facility operated by Bluefield Hospital Company from January 1, 2008 to the present.

#6  Produce all documents or communications reflecting or referring to complaints made by any person regarding Dr. Elder, including but not limited to medical treatment rendered by him in the emergency room/trauma setting.

#7  Produce all documents relating to any investigations of Dr. Elder, including but not limited to investigations of his medical treatment by a state medical board or any other agency.

#8  Produce all documents relating to any evaluation, investigation, or internal review conducted by Island Medical, Bluefield Hospital Company, any medical committee, official board of medicine, and/or other entity in connection with the care and treatment provided to Decedent.

#9  Provide a copy of any variances, incident reports, or complaints that relate to Dr. Elder.

#19  Provide a copy of any minutes, notes and/or writings from all Bluefield Regional and/or Emergency Department meetings that relate in any way to Decedent.

#21  Produce any documents or communications between Dr. Elder and Bluefield Hospital Company relating to Decedent or her medical care or treatment.

#23  Produce a copy of any written statements that were taken from anyone regarding the facts of this case that are in your possession, custody, or control.

#24  Produce any documents in your possession, custody, or control that were exchanged between Dr. Elder and a committee or organization that reviewed medical treatment rendered by Dr. Elder in the emergency room or trauma setting.

**BRMC's Argument Against Production of Documents**[2]

BRMC asserts that the enumerated requests, *supra*, seek privileged information for which no exception or waiver applies pursuant to Rule 45(d)(3)(iii) of the Federal Rules of Civil Procedure. (ECF No. 29) BRMC has asserted several privileges[3] that prohibit disclosure of the documents responsive to the disputed requests, however, the parties have focused their dispute as to the application of two privileges: Peer Privilege Review pursuant to W. Va. Code § 30-3C-1, *et seq.* and Patient Safety Work Product ("PSWP") under the Health Care Quality Improvement Act ("HCQIA") pursuant to 42 U.S.C. § 11101, *et seq.* (Id. at 2-3)

BRMC submitted a privilege log (ECF No. 34) and then a revised privilege log (ECF No. 38) that described and specified: (1) the documents requested; (2) the entity or entities and the names of the pertinent custodians of the documents; (3) the request number to which the documents respond; (4) the documents' origin and use (why the documents were created and for what purpose); and (5) the privilege asserted with supporting statutory and legal authority.

**Plaintiff's Argument in Support of Production of Documents**

Plaintiff contends that BRMC failed to meet its burden establishing peer review privilege or the privilege provided under the Patient Safety and Quality Improvement Act.

With regard to the peer review privilege, Plaintiff argues that BRMC fails to properly assert this privilege concerning the "Complaints and Grievances Log" and "Event Reports" because it does not cite any bylaws, policies, procedures or additional information that indicates the "Risk

---

[2] On December 31, 2018, Defendant filed a Joinder in BRMC's Motion to Quash that essentially echoes some of the arguments advanced by BRMC. (ECF No. 41) On January 8, 2019, Plaintiff filed a Response to this Joinder that repeats most of the arguments in the Response in opposition to BRMC's Motion to Quash. (ECF No. 46) For the sake of simplicity, and because the primary arguments concerning whether BRMC established its asserted privileges with respect to the withheld documentation are more fully discussed in the pleadings submitted between BRMC and Plaintiff, the undersigned does not address these additional pleadings (Defendant's Joinder and Plaintiff's Response thereto) in detail as they are duplicative.

[3] One of the privileges asserted included the attorney-client privilege and work product doctrine. These will be discussed further, *infra*.

Manager" and "Area Director" are part of a qualifying review organization, and further, BRMC does not indicate that these withheld documents were generated solely for peer review. (ECF No. 40 at 4) Plaintiff further contends that BRMC failed to identify who originated the documents described as the "National Practitioner Data Bank ("NPDB") Query", "WV Board of Medicine Search Details", "Delineation of Privileges Checklist", and "Event Report." (Id.) Because the author of these documents is not identified, the Court cannot determine if a peer review committee created the documents. (Id. at 5) Finally, with the exception of the "Credentialing Form/Application for Privileges", BRMC does not specify if these documents were used solely for peer review or patient safety processes. (Id.) If the documents are not generated solely for peer review purposes, there is no privilege. (Id.)

Next, Plaintiff asserts that BRMC failed to establish a patient safety work product privilege pursuant to the Patient Safety and Quality Improvement Act because BRMC has not demonstrated that these documents were prepared for or submitted to a patient safety organization ("PSO"). (Id. at 6-7) Moreover, Plaintiff claims that BRMC has not shown that the withheld documents are protected under the Health Care Quality Improvement Act ("HCQIA") because the privilege log does not identify if these documents were submitted to the Secretary of Health and Human Services. (Id. at 7-8)

Finally, Plaintiff argues that BRMC's attorney-client and work product doctrine applies because the privilege log fails to identify that the documents were communicated to an attorney to seek legal advice or services. (Id. at 8)

In reply, BRMC points out that Plaintiff requested that BRMC submit a final and complete privilege log in support of its Motion to Quash and that BRMC did so. (ECF No. 42 at 2) However, Plaintiff then requested that BRMC provide additional details concerning the privileged

5

documents, to which BRMC submitted its revised privilege log. (Id.) Despite BRMC's efforts, Plaintiff still contends that the privilege log does not suffice. (Id.)

BRMC asserts that on November 9, 2018, it produced its by-laws to Plaintiff as an exhibit attached to its response to subpoena, and that the by-laws clearly describe the existence and duties of the peer review organization. (Id. at 2-3) Further, BRMC has provided more than mere assertions of peer review privilege, its revised privilege log contains adequate document descriptions, specific custodians and detailed descriptions of the documents, their origin and use as well as an exhaustive list of privileges. (Id. at 4)

BRMC also contends that it has established the application of the privilege afforded by the Patient Safety and Quality Improvement Act; BRMC is a member of a patient safety organization, CHS PSO, LLC. (Id.) This information was provided in its Motion to Quash as well as in the revised privilege log. (Id.) BRMC specifically noted that the privileged documents were generated by and through CHS PSO, LLC and that CHS PSO, LLC was the custodian. (Id. at 5)

BRMC asserts that certain documents were specifically described in the revised privilege log as "prepared in anticipation of litigation" which adequately shows that the attorney-client privilege and/or work product doctrine applies. (Id.)

In response to this Court's inquiry if BRMC would agree to an *in camera* review of the withheld documents, BRMC, by counsel, submitted a letter dated January 24, 2019 explaining why *in camera* review would be improper. (ECF No. 50) Notably, BRMC explained that it has maintained a PSO Agreement with CHS PSO, LLC since January 11, 2012 and the purpose of this relationship is to allow for confidential and protected exchange of patient safety and quality information in the conduct of patient safety activities. BRMC explained that it maintains an internal process, the Patient Safety Evaluation System ("PSES"), used for collecting and managing

6

patient safety work product that may be reported to CHS PSO, LLC. This patient safety work product can be in the form of event reports that have been identified in the privilege log, but it does not include billing, medical or original provider records. Plaintiff has been provided all non-privileged information, but is not entitled to patient safety work product, as it is expressly privileged under the Patient Safety and Quality Improvement Act and not subject to any subpoena or order, even when there is a proceeding against a provider. None of the exceptions under the Act apply in this case.

BRMC also submitted two exhibits along with its letter: (1) "CHS PSO, LLC Provider Participation Agreement" entered on January 11, 2012 between CHS PSO, LLC and BRMC, signed by Rachel A. Seifert, CHS PSO Executive Vice President and Secretary and Martin G. Schweinhart, BRMC President (ECF No. 50-1); and (2) "Affidavit of Jim O'Loughlin", BRMC Chief Executive Officer, notarized on January 22, 2019. (ECF No. 50-2) Mr. O'Loughlin affirmed that the documents responsive to certain requests in Plaintiff's subpoena are maintained within BRMC's Patient Safety Evaluation System ("PSES"), constitute patient safety work product, are described in the privilege log and reported to CHS PSO, LLC as part of BRMC's patient safety activities.

In response, Plaintiff argues that BRMC's letter further shows that its privilege log(s) were deficient, and because it failed to meet its burden establishing the asserted privileges, BRMC has effectively waived them. (ECF No. 51) Plaintiff also contends that because the Affidavit and other materials were submitted after the deadlines provided in the briefing schedule, the letter and exhibits should be stricken.[4] (Id. at 2) Plaintiff maintains that BRMC has not explained how the

---

[4] See Moss v. Experian Info. Sols., Inc., No. 3:16-6213 (S.D.W.Va. Mar. 24, 2017). (ECF No. 51 at 2, fn1)

asserted privileges attach to the withheld documents and requests that it be ordered to produce same or submit them for *in camera* review. (Id. at 3)

**Relevant Law**

Rule 26 of the Federal Rules of Civil Procedure provides the following guideline when a party is claiming privilege and withholds information that would otherwise be discoverable: "The party must expressly make the claim and describe the nature of the documents, communications, or tangible things not produced or disclosed – and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim." See Fed. R. Civ. Pro. Rule 26(b)(5)(A).

The party seeking the protections of the peer review privilege bears the burden of establishing its applicability by more than a mere assertion of privilege. Syl. Pt. 3, State ex rel. Wheeling Hosp., Inc. v. Wilson, 782 S.E.2d 622 (W.Va. Feb. 9, 2016)

A party wishing to establish applicability of the peer review privilege as set forth in W. Va. Code § 30-3C-3 should submit a privilege log which identifies each document for which the privilege is claimed by name, date, and custodian; contains specific information regarding (1) the origin of each document, and whether it was created solely for or by a review committee, and (2) the use of each document, with disclosures as to whether or not the document was used exclusively by such committee; and provides a description of each document and a recitation of the law supporting the claim of privilege. Syl. Pt. 4, Id.; see also, Johnson v. Ford Motor Company, No. 3:13-cv-20976, 309 F.R.D. 226, 232 (S.D.W. Va. Aug. 28, 2015) (M.J. Eifert) (quoting Sky Angel US, LLC v. Discovery Communications, LLC, 28 F.Supp.3d 465, 483 (D.Md.2014) ("A party can sustain this burden through a properly prepared privilege log that identifies each document withheld, and contains information regarding the nature of the privilege/protection claimed, the

name of the person making/receiving the communication, the date and place of the communication, and the document's general subject matter.")) "A privilege log meets the standard for asserting and preserving a privilege even if not detailed, if it identifies 'the nature of each document, the date of its transmission or creation, the author and recipients, the subject, and the privilege asserted.' " Id. (citing Clark v. Unum Life Ins. Co. of Am., 799 F.Supp.2d 527, 536 (D.Md.2011)(quoting N.L.R.B. v. Interbake Foods, LLC, 637 F.3d 492, 502 (4th Cir. 2011))

The peer review privilege asserted by BRMC is contained in the Health Care Peer Review Organization Protection Act, codified at W. Va. Code § 30-3C-3 and provides the following:

> The proceedings and records of a review organization shall be confidential and privileged and shall not be subject to subpoena or discovery proceedings or be admitted as evidence in any civil action arising out of the matters which are subject to evaluation and review by such organization and no person who was in attendance at a meeting of such organization shall be permitted or required to testify in any such civil action as to any evidence or other matters produced or presented during the proceedings of such organization or as to any findings, recommendations, evaluations, opinions or other actions of such organization or any members thereof: Provided, That information, documents or records otherwise available from original sources are not to be construed as immune from discovery or use in any civil action merely because they were presented during proceedings of such organization, nor should any person who testifies before such organization or who is a member of such organization be prevented from testifying as to matters within his knowledge, but the witness shall not be asked about his testimony before such an organization or opinions formed by him as a result of said organization hearings: Provided, however, That an individual may execute a valid waiver authorizing the release of the contents of his file pertaining to his own acts or omissions, and such waiver shall remove the confidentiality and privilege of said contents otherwise provided by this section[.]

"[W]hen the by-laws do not clearly indicate that peer review is a function of the committee, the party asserting the privilege has the burden of presenting additional information." State ex rel. HCR Manorcare, LLC v. Stucky, 235 W. Va. 677, 691, 776 S.E.2d 271, 285 (2015) (quoting State ex rel. Shroades v. Henry, 187 W.Va. 723, 729, 421 S.E.2d 264, 270 (1992)).

Ordinarily, the recognition of an implied waiver of the peer review privilege is disfavored because of the accompanying infringement upon the right to confidentiality which the privilege was designed to protect. State ex rel. Brooks v. Zakaib, 2003, 588 S.E.2d 418 (W. Va. June 23, 2003).

Under the Patient Safety and Quality Improvement Act ("PSQIA"), the pertinent privileges are explained in 42 U.S.C. § 299b-22 (**bold** in original):

**(a) Privilege**

Notwithstanding any other provision of Federal, State, or local law, and subject to subsection (c), patient safety work product shall be privileged and shall not be—

(1) subject to a Federal, State, or local civil, criminal, or administrative subpoena or order, including in a Federal, State, or local civil or administrative disciplinary proceeding against a provider;

(2) subject to discovery in connection with a Federal, State, or local civil, criminal, or administrative proceeding, including in a Federal, State, or local civil or administrative disciplinary proceeding against a provider;

(3) subject to disclosure pursuant to section 552 of Title 5 (commonly known as the Freedom of Information Act) or any other similar Federal, State, or local law;

(4) admitted as evidence in any Federal, State, or local governmental civil proceeding, criminal proceeding, administrative rulemaking proceeding, or administrative adjudicatory proceeding, including any such proceeding against a provider; or

(5) admitted in a professional disciplinary proceeding of a professional disciplinary body established or specifically authorized under State law.

**(b) Confidentiality of patient safety work product**

Notwithstanding any other provision of Federal, State, or local law, and subject to subsection (c), patient safety work product shall be confidential and shall not be disclosed.

42 U.S.C. § 299b-21provides several definitions pertinent to the issues at bar (**bold** in original):

**(5) Patient safety activities**

The term "patient safety activities" means the following activities:
**(A)** Efforts to improve patient safety and the quality of health care delivery.
**(B)** The collection and analysis of patient safety work product.
**(C)** The development and dissemination of information with respect to improving patient safety, such as recommendations, protocols, or information regarding best practices.
**(D)** The utilization of patient safety work product for the purposes of encouraging a culture of safety and of providing feedback and assistance to effectively minimize patient risk.
**(E)** The maintenance of procedures to preserve confidentiality with respect to patient safety work product.
**(F)** The provision of appropriate security measures with respect to patient safety work product.
**(G)** The utilization of qualified staff.
**(H)** Activities related to the operation of a patient safety evaluation system and to the provision of feedback to participants in a patient safety evaluation system.

**(6) Patient safety evaluation system**
The term "patient safety evaluation system" means the collection, management, or analysis of information for reporting to or by a patient safety organization.

**(7) Patient safety work product**
**(A) In general**
Except as provided in subparagraph (B), the term "patient safety work product" means any data, reports, records, memoranda, analyses (such as root cause analyses), or written or oral statements--
**(i)** which--
**(I)** are assembled or developed by a provider for reporting to a patient safety organization and are reported to a patient safety organization; or
**(II)** are developed by a patient safety organization for the conduct of patient safety activities;
and which could result in improved patient safety, health care quality, or health care outcomes; or
**(ii)** which identify or constitute the deliberations or analysis of, or identify the fact of reporting pursuant to, a patient safety evaluation system.

**(B) Clarification**
**(i)** Information described in subparagraph (A) does not include a patient's medical record, billing and discharge information, or any other original patient or provider record.
**(ii)** Information described in subparagraph (A) does not include information that is collected, maintained, or developed separately, or exists separately, from a patient safety evaluation system. Such separate information or a copy thereof reported to a

patient safety organization shall not by reason of its reporting be considered patient safety work product.
**(iii)** Nothing in this part shall be construed to limit--
**(I)** the discovery of or admissibility of information described in this subparagraph in a criminal, civil, or administrative proceeding;
**(II)** the reporting of information described in this subparagraph to a Federal, State, or local governmental agency for public health surveillance, investigation, or other public health purposes or health oversight purposes; or
**(III)** a provider's recordkeeping obligation with respect to information described in this subparagraph under Federal, State, or local law.

**Analysis**

Attorney-Client Privilege/Work Product Doctrine:

In its revised privilege log, BRMC asserted the attorney-client privilege and work product doctrine in support of its argument against disclosure with respect to documents that are labelled under the "Document Description" as "#1a"[5] and further described as "Complaints and Grievances Log", "Lists Complaints made in the Emergency Department", and "Log not dated although Occurrence date ranges from 6/12/17 to 4/26/18". (ECF No. 38 at 1) The privilege log also identifies as documents labelled "#1b" and "#5"[6] and further described as "Event Reports (both factual and PSWP [Patient Safety Work Product]"; BRMC specifically identified four (4) "Event Reports" by an identification number and date. (ECF No. 38 at 2, 5) The privilege log states that "These Reports result from these Complaints and result in Investigations" and that the "Event Reports are prepared in anticipation of litigation." (Id.)

As an initial matter, under the Fourth Circuit's "classic test", the privilege log contains no indication that the Event Reports were prepared for an attorney, or member of the bar of a court, or contained communications seeking legal advice, legal services, or assistance in some legal

---

[5] The revised privilege log states that these documents are responsive to Plaintiff's Subpoena Request Nos. 6 and 9. (ECF No. 38 at 1)
[6] The revised privilege log states that these collective documents are responsive to Plaintiff's Subpoena Request Nos. 6, 8, 9, 19, 21, 23, and 24) (Id. at 1 and 5)

12

proceeding. See, United States v. Jones, 696 F.2d 1069, 1072 (4th Cir. 1982). That these documents were "prepared in anticipation of litigation" is nothing more than a cursory assertion of the attorney-client privilege and/or work product doctrine. The undersigned **FINDS** that BRMC has not met its burden of establishing the applicability of the attorney-client privilege and work product doctrine. State ex rel. USF & G v. Canady, 460 S.E.2d 677, 684 (1995)

Peer Review Privilege:[7]

The revised privilege log indicates that the documents described as "#1a" and further described as "Complaints and Grievances Log", "Lists Complaints made in the Emergency Department", and "Log not dated although Occurrence date ranges from 6/12/17 to 4/26/18" (ECF No. 38 at 1), *supra*, and are more specifically identified under the "Origin and Use" heading as "Documents generated as part of BRMC's quality of care, performance improvement, and peer review process to review and address patient complaints and grievances. This is a log of patient complaints." (Id.) BRMC's revised privilege log further explains that "The BRMC Risk Manager[8] generates these documents from Complaints made by patients. The Risk Manager enters this information into the system. The specific complaint is referred to the Area Director for Investigation." (Id.) Additionally, BRMC provides that "This procedure Complies with Joint Commission Guidelines to address and resolve complaints." (Id. at 2) BRMC claims the peer review privilege based on W. Va. Code § 30-3C-1, *et seq*.; State ex rel. Charles Town Gen. Hosp. v. Sanders, 210 W. Va. 118, 126, 556 S.E.2d 85 (2001); State ex rel. Wheeling Hospital v. Wilson, 236 W. Va. 560, 782 S.E.2d 622 (2016); Young v. Saldanha, 189 W. Va. 330, 431 S.E.2d 669

---

[7] Where the peer review privilege is claimed, BRMC's revised privilege log also asserts a privilege pursuant to the "Health Care Quality Improvement Act (HCQIA) 42 U.S.C. § 11101, *et seq*. and/or Patient Safety and Quality Improvement Act (PSQIA), 42 CFR Part 3/Patient Safety Organization." (Id. *passim*) As the parties have addressed each claimed privilege individually, the undersigned does the same herein, however, it is apparent that the twin privileges asserted contain overlap with respect to certain documents described by BRMC.
[8] The Risk Manager is identified as Revonda Wills, who is further identified as the custodian of these documents. (Id.)

(1993); see also, KD v. United States, 715 F.Supp.2d 587 (D. Del. May 25, 2010); Francis v. United States, 2011 LEXIS 59762 (S.D.N.Y. 2011); Sevilla v. United States, 852 F.Supp.2d 1057, 1068 (N.D. Ill. 2012). (Id.)

BRMC's revised privilege log also identifies certain documents: "#2a" is "Correspondence from Medical Board to Dr. Elder dated 5/24/12"; "#2b" is a "Memo prepared by Dr. Elder (undated)"; "#2c" is "Correspondence from Attorney representing Dr. Elder dated January 26, 2012"; "#2d" is NPDB Query and Report dated August 1, 2017"; and "#2e" is "WV Board of Medicine Search Details dated 6/28/18". (Id. at 3-4) The custodian of these documents is identified as "BRMC: Sharon Collier, Medical Staff Coordinator" and are asserted to be responsive to Plaintiff's Subpoena Request Nos. 7 and 8. (Id.) Under the "Origin and Use" heading, BRMC describes these documents: "Provided to BRMC during the application for privileges/credentials process. Used by BRMC in the application for Privileges/Credentials. Used in the analysis by the hospital as to whether to grant privileges." (Id.) The NPDB Query is described further as "Query performed by BRMC during the application for privileges analysis and process. BRMC required by law to query NPDB in credentialing/privileges process" and "Query performed by BRMC during the application for privileges analysis and process." (Id.) BRMC lists the same legal authority, *supra*, for the asserted privilege. (Id.)

The revised privilege log also identifies certain documents as "#3", described as "Kerren H. Elder, M.D.'s Emergency Medicine Delineation of Privileges Checklist. Dated on 8/24/17, 8/31/17 and 10/4/17." (Id. at 4) Again, Sharon Collier is identified as the custodian for these documents which are responsive to Plaintiff's Subpoena Request Nos. 4 and 5. (Id.) Under the "Origin and Use" heading, BRMC states that these documents are "Utilized during the application

14

for privileges/credentials process regarding the requesting and approval of privileges." (Id.) The same aforementioned legal authority is cited in support of the asserted privilege. (Id.)

For documents identified as "#4", described as "Kerren H. Elder, M.D.'s Credentialing Form/Application for Privileges Dated 3/9/17." (Id.) Again, Sharon Collier is identified as the custodian for these documents which are responsive to Plaintiff's Subpoena Request Nos. 4 and 5. (Id.) Under the "Origin and Use" heading, BRMC states that these documents are "Prepared and utilized to apply for Privileges/Credentials at BRMC. Used by BRMC solely in the application for Privileges/Credentials. Used in the analysis by the hospital as to whether to grant privileges." (Id.) The same aforementioned legal authority is cited in support of the asserted privilege. (Id. at 4-5)

For documents identified as "#5", described as "Event Report (both factual and PSWP) #1020310 dated 6/6/17-9/14/17", the custodians for these documents have been identified as "BRMC; Revonda Wills, Risk Manager BRMC-CHS PSO, LLC", and are responsive to Plaintiff's Subpoena Request Nos. 8, 19, 21, 23, and 24. (Id. at 5) Under the "Origin and Use" heading, BRMC states that "The Peer Review File contained patient safety work product, incident reports, meeting minutes, and statements. Was created for the peer review/quality assurance issues. This document was used by the peer review committee for the purpose of (1) evaluating and improving the quality of health care rendered; (2) reducing morbidity or mortality; or (3) establishing and enforcing guidelines. Material generated as part of BRMC's quality of care, performance improvement, and peer review process to review and address possible healthcare quality issues." (Id.) The same legal authority is cited in support of the asserted privilege. (Id.)

The descriptions of the documents withheld in BRMC's revised privilege log comports with the pertinent legal authority for the assertion and preservation of the peer review privilege. Plaintiff has argued that BRMC failed to cite its own "bylaws, policies, procedures, or additional

15

information establishing that the Risk Manager and Area Director are part of a qualifying review organization and that these documents were generated and used solely for a peer review function". (ECF No. 40 at 4) This argument lacks merit – BRMC explicitly identified those parties as part of its peer review process, and further, although specific "bylaws, policies, procedures" were not expressly cited in the privilege log, BRMC provided "additional information" that established that those identified parties/custodians were involved in the peer review process insofar as the Risk Manager generates these documents from complaints made by patients, enters this information into a system and specific complaints are then referred to the Area Director for an investigation. Additionally, BRMC has contended that it already produced its bylaws, policies and procedures that entailed the peer review process to Plaintiff during discovery. Plaintiff does not dispute this – indeed, Plaintiff's November 27, 2018 letter to counsel for BRMC indicates that the "by-laws and regulations" had been produced, but were unsigned, and Plaintiff needed verification if they were the correct versions. (ECF No. 51-1 at 4)

With respect to Plaintiff's contention that BRMC's privilege log does not clearly identify the author of the documents described as "#2d, #2e, #3, and #5", it is noted that the "custodians" of these documents are clearly identified. The privilege log states that for documents #2d, the query is performed by BRMC during the application for privileges analysis and process; documents #2e concerns the West Virginia Board of Medicine search details; #3 concerns Dr. Elder's emergency medicine privileges checklist; and #5 concerns a Peer Review File that also contains patient safety work product that is submitted to BRMC's Patient Safety Organization, CHS PSO, LLC. The descriptions provided by BRMC's privilege log are clear and leave no question that these documents were generated for peer review purposes. Plaintiff's contention that a specific author for these documents is of no moment, as the custodians or generators for these documents are

specifically identified, and further, BRMC has provided enough evidence that this information was provided to a peer review committee. To the extent that Plaintiff contends that BRMC gave no assurance that these documents were used "solely" for peer review or patient safety purposes, there is no evidence that BRMC has disclosed this information to other entities that interferes with or otherwise waives the asserted privileges. It is apparent from the privilege log that in addition to certain documents being used for peer review purposes, the same information has been submitted to its Patient Safety Organization, CHS PSO, LLC, which is also governed by explicit privileges under federal law, discussed *infra*.

In short, BRMC has submitted sufficient evidence that indicates that the documents being withheld are protected under the peer review privilege.

PSO/Patient Safety Work Product Privilege:

BRMC claims PSO/Patient Work Product privilege with regard to the documents identified as "#1b and #5" which are collectively described as "Event Report (both factual and PSWP [Patient Safety Work Product]" and, as stated *supra*, have been specifically identified as "Event Report #10222593 dated 6/12/17, Event Report #1188293 dated 4/26/18, Event Report #1182917 dated 8/13/18, Event Report #1020310 dated 6/6/17-9/14/17." (Id. at 2, 5) The revised privilege log identifies the custodians of these documents as "BRMC; Revonda Wills, Risk Manager; BRMC – CHS PSO, LLC", and are responsive to Plaintiff's Subpoena Request Nos. 6, 8, 9, 19, 21, 23, and 24. (Id. at 1 and 5)

With regard to the documents identified as "#1b", under the "Origin and Use" heading, these documents are described as "The Event Reports are prepared as a result of the items reported in the Complaints and Grievance Log. The PSWP Event Reports include additional deliberations and analysis, exclusively intended for patient safety and quality improvement purposes." (Id. at 2)

17

BRMC cites the supporting legal authority for the privilege: "Event Reports identify Patients and Protected Health Information (PHI) HIPPA"; "Event Reports are PSO/Patient Safety Work Product documents. Protected from Disclosure by PSQIA (42 CFR Part 3) and WV Code 30-3C-1, et seq."; and "The reports are confidential and privileged Patient Safety Work Product, as defined in the Patient Safety and Quality Improvement Act of 2005, 42 U.S.C. §299b-21(7) (the 'PSQIA') and is therefore subject to mandatory confidentiality and privilege protections outlined in the PSQIA, including prohibition of any use in discovery for civil litigation. 42 U.S.C. §299b-22(a)." (Id. at 2-3)

With regard to the documents identified as "#5", under the "Origin and Use" heading, these documents are described as "Patient Safety Work Produc[t] ('PSWP') Event Report was collected and completed within Bluefield Regional Medical Center's Patient Safety Evaluation System ("PSES") consistent with the Hospital's relationship with CHS PSO, LLC. The PSWP Event Report was assembled and developed for reporting to CHS PSO and was reported to CHS PSO, for purpose of improving patient safety, health care quality, and health care outcomes. The PSWP Event Report includes additional deliberations and analysis, exclusively intended for patient safety and quality improvement purposes." (Id. at 5-6) BRMC cites the same supporting legal authority as cited in support of the privilege asserted for the documents identified as "#1b", *supra*. (Id. at 6)

BRMC's privilege log clearly sets forth sufficient evidence that the materials protected under patient safety work product as envisioned under the Patient Safety and Quality Improvement Act. To the extent that Plaintiff contends that BRMC has not provided affirmative evidence of the existence of a Patient Safety Organization and that such an organization actually received the documents, BRMC's privilege log explicitly states that those documents identified as "#5" were submitted to CHS PSO, LLC. For those documents identified as "#1b", the privilege log does not

18

explicitly so state that they were submitted to CHS PSO, LLC, however, the Patient Safety and Quality Improvement Act clearly intended that such information prepared for the purpose of reporting to a PSO, "that is documented as collected within the provider's PSES to be PSWP and thus privileged and confidential *before* it is reported to a PSO." See *Patient Safety and Quality Improvement Act of 2005 – HHS Guidance Regarding Patient Safety Work Product and Providers' External Obligations*, 81 FR 32655-01, at *32656 (emphasis added).[9] Moreover, to the extent that Plaintiff argues that BRMC's submission of its CEO's Affidavit and its Provider Participation Agreement with CHS PSO, LLC after the briefing deadlines should be stricken for being untimely (ECF No. 51), it is clear that controlling jurisprudence and the statutory authority for such an extreme sanction is unwarranted.[10] See generally, Shroades, 187 W.Va. at 729 ("the party asserting the privilege has the burden of presenting additional information").

In sum, BRMC has submitted sufficient evidence that indicates that the documents being withheld are protected under the patient safety work product/PSO privilege.

## Conclusion

Having determined that BRMC's privilege log meets the dictates of Rule 26(b)(5)(A) and that BRMC provided sufficient evidence supported the asserted privileges contained therein, the undersigned **GRANTS** BRMC's ***Motion to Quash*** (ECF No. 29).

In accordance with Rule 72(a) of the Federal Rules of Civil Procedure, the ruling set forth above on this non-dispositive motion may be contested by filing, within 14 days, objections to this Order with District Judge Irene C. Berger. If objections are filed, the District Court will consider

---

[9] This Guidance became effective on May 24, 2016 and therefore governs each of the identified documents BRMC claims patient safety work product privilege.

[10] Furthermore, BRMC's January 24, 2019 letter and additional attachments were submitted in response to this Court's inquiry as to whether BRMC would be amenable to *in camera* review; counsel for BRMC had to wait on his client's response to the Court's offer before committing one way or another. Under these circumstances, BRMC's conduct cannot be properly characterized as untimely.

19

the objections and modify or set aside any portion of the Order found clearly to be erroneous or contrary to law.

The Clerk is requested to send a copy of this Order to all counsel of record.

**ENTER: February 5, 2019**.

Omar J. Aboulhosn
United States Magistrate Judge